## Louis Bergdoll Brewing Company, Appellant, *v.* Babe.

*Principal and agent—Sale of real estate—Power to receive purchase money—Corporation—Evidence.*

A corporation appointed a real estate agent as its agent to secure a purchaser for land, which the company owned in a city other than that in which it had its principal office. The person thus employed put up a "For Sale" sign with his name on it as agent, but this was not known to the corporation. A purchaser was procured by the agent, and offered a certain sum for the property. The secretary of the corporation waited upon the purchaser and endeavored to secure a better offer. Not succeeding in this he said that the purchaser might further "arrange with" the agent, naming him, or "finish it out with" the agent. The corporation subsequently accepted the offer of the purchaser. The latter then employed the agent to raise money on a mortgage on other real estate owned by him, and such a mortgage was arranged with a trust company. The money was paid to the agent, who in his books credited it to the account of the purchaser, and made certain payments out of it at the request of the purchaser, and added certain amounts to it received from the purchaser; so that the amount of the loan which was the amount of the purchase money, was kept about the same. Delay occurred in delivering the deed, and in the meantime the agent died, and his estate was found insolvent. *Held*, that the agent had no authority to receive the money on behalf of the corporation, and that in placing the loan and receiving the proceeds thereof, he acted as the agent of the purchaser.

Argued Nov. 21, 1906. Appeal, No. 172, Oct. T., 1906, by plaintiff, from judgment of C. P. Delaware Co., March T., 1905, No. 164, on verdict for defendant in case of The Louis Bergdoll Brewing Co. v. John Babe. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Ejectment for land in the city of Chester. Before JOHNSON, P. J.

The facts are stated in the opinion of the Superior Court. Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in not entering judgment upon the whole record in favor of plaintiff non obstante veredicto.

*W. B. Broomall*, with him *Robert A. Meier*, for appellant.— An agent appointed by parol to sell land cannot receive the purchase money unless so authorized by his power: Dyer v. Duffy, 24 Lawyers' Reports Annotated, 339 ; Peck v. Harriott, 6 S. & R. 146 ; Divinney v. Reynolds, 1 S. & R. 328; Campbell v. Foster Home Assn., 163 Pa. 609; Mynick v. Bickings, 30 Pa. Superior Ct. 401.

*O. B. Dickinson*, with him *A. B. Geary*, for appellee.—In determining the liability of the principal to such third persons for the acts of the agent, the inquiry is not restricted to the actual authority of the agent, but extends to the question of apparent authority: Langenheim v. Anschutz-Bradberry Co., 2 Pa. Superior Ct. 285 ; Brewing Co. v. Schmidt, 24 Pa. Superior Ct. 396; Clark & Skyles on Agency, sec. 208, p. 496; Griggs v. Selden, 58 Vt. 561 (5 Atl. Repr. 504); Johnson v. Hurley, 115 Mo. 513 (22 S. W. Repr. 492).

Facts from which inferences of agency may be drawn are for the jury : Lamb v. Irwin, 69 Pa. 436 ; Singer Mfg. Co. v. Christian, 211 Pa. 534; Nicholson v. Golden, 27 Mo. App. 132.

OPINION BY HEAD, J., May 13, 1907 :

Inasmuch as the principal assignment of error questions the sufficiency of the evidence, as a whole, to support the verdict rendered, the disposition of the case requires us to go into a somewhat detailed review of the testimony and the facts established thereby.

Prior to the transaction in 1904 which gives rise to this litigation, the plaintiff, a corporation doing business in Philadelphia, was the undisputed owner of a certain property in the city of Chester. The premises being without a tenant for the ensuing year, the plaintiff, on February 16, 1904, wrote to one Cochran, a real estate agent in Chester, inquiring as to the probability of securing a lessee and the amount of his commis-

sion for collecting rent. Cochran replied on the eighteenth, giving the information desired, and on the nineteenth the company authorized him to rent the property for "$150 per year or more." On the twenty-ninth Cochran wrote he had a tenant who would lease if repairs were made and who would also entertain a proposition to buy at a reasonable price and asked instructions. On the same day the plaintiff replied, asking an estimate of the value of property to be submitted to the directors. On March 2, Cochran wrote that Babe, the defendant, would give "one thousand dollars cash" for the property; advised the acceptance of the offer and suggested that a representative of the company come down and look over the situation. The secretary of the company came to Chester and had an interview with Babe, the whole tenor and object of which were to induce the latter to raise his offer; but, his effort failing, he returned home after saying to Babe he could "arrange with Mr. Cochran," or "that Cochran could finish it out." This was the only direct communication, verbal or written, that the defendant claims to have had with any officer of the plaintiff company. After some further correspondence between Cochran and the plaintiff on the subject of price, the company finally determined to accept the offer of Babe and on April 7 the board of directors resolved "to accept the offer of I. E. Cochran, in behalf of John Babe, of one thousand dollars . . . . and that the officers of the company be and are hereby directed to make the necessary conveyance upon receipt of the purchase money." On May 5, 1904, a more formal resolution was adopted by the board reciting the bargain and sale to Babe for $1,000, directing the president, by name, to execute a deed, the secretary to affix the corporate seal thereto, "and upon receipt of said purchase money to deliver said deed to the purchaser." Down to this time it seems to be agreed that the parties had entered into a good executory contract for the sale and purchase of the premises in dispute. The amount of the purchase money, viz.: $1,000, and the manner of payment, to-wit: cash, had been fixed in the offer and acceptance. There was no request for and no suggestion of payment in any other way made by either of the principals.

In a letter dated April 20, 1904, the plaintiff notified Cochran of its acceptance of the defendant's offer and on that day

or the next, Cochran, on his own motion, asked for and obtained from the defendant a payment of $100, on account of the purchase money, and at the same time directed or permitted the defendant to take possession of the premises and begin some needed repairs.   No notice of the payment of this money or of the change of possession was ever given to the plaintiff by Cochran, by the defendant or any other person, and we are unable to discover any evidence that the company ratified or assented to either of these assumptions of authority by Cochran. After his offer of $1,000 cash had been accepted the defendant undertook to obtain that sum by a loan to be secured by a mortgage on other real estate owned by him in Chester, and applied for such a loan and a policy of title insurance to the Delaware Trust Company.   To this transaction the plaintiff was an entire stranger, having no connection whatever with it. The defendant selected Cochran as his agent or representative to conduct this negotiation for him.   The necessary bond and mortgage were drawn up by Cochran, or in his office; they were there executed by Babe and then turned over to Cochran, and the trust company was authorized by Babe to make settlement with Cochran and pay to him the proceeds of the loan. Accordingly, on May 5, 1904, the trust company gave its check to Cochran for $986.50, the proceeds of the loan after deducting its costs and commissions.   This money was credited in the . books of Cochran to Babe by the following entries in the cash book and "scratcher," viz.: in the former "cash from trust company $986.50, John Babe,'—in the latter, " John Babe, commission on loan, $5.00 ; writing mortgage, $5.00; title, etc., $13.00; endorsement on fire insurance policy, $ .50.   Charge ledger account $23.50."   The ledger account of John Babe shows a credit to him of $1,000, "mortgage loan from trust company," with a charge against him of the items above mentioned and another to which we will refer later.   As to this fund at least we think it undeniable, under the evidence, that Cochran received and held it solely as the representative of Babe, and could have been compelled at any time to return it, use or dispose of it as he, Babe, might direct.   Thus it appears that after May 5, 1904, Cochran had in his hands, after deducting charges, etc., $1,076.50 of the money of Babe.   On June 21, at the instance of the latter, Cochran paid $100 cash

to one Nodes, the son-in-law of Babe, charging it in the ledger account already referred to, thus reducing the fund to $976.50. Later, however, Cochran asked for and obtained from Babe the further sum of $30.00, thus again raising the fund in his hands to a little above the entire purchase money.

Meantime the consummation of the sale had been delayed by the examination of the title by the trust company and by its demand, finally acceded to by the plaintiff, that the authority to sell, conferred by the resolution of the board of directors already cited, should be supplemented by a like authority coming from the stockholders. Thus the delay seems to have been occasioned by those who were seeking to guard and secure the title the defendant was about to take. Early in November, 1904, at the annual meeting of the stockholders of the plaintiff company, the action of the board was formally ratified, thus leaving nothing further to be done by the parties but the delivery of the deed by the one, the payment of the purchase money by the other.

With matters in this condition, before either party had made any formal tender, and with the money of the defendant, as stated, in his hands, Cochran fell ill and died. We gather from the testimony that his estate is insolvent. Shortly after his death a representative of the defendant made a demand on the plaintiff for the deed. The company then, as at all times, declared its readiness to deliver the conveyance on receipt of the purchase money, but the defendant, taking the position that he had already paid to Cochran and thus paid the plaintiff, declined to pay more, and, holding his possession, this action of ejectment was begun.

During the trial the plaintiff tendered a fully executed deed, and expressed its willingness to accept a conditional verdict to be released on payment of the purchase money, and, at the conclusion of the testimony, prayed for binding instructions in its favor. The learned trial court refused its prayer and submitted the entire question to the jury, permitting them to find, upon evidence tending to prove the facts already stated and one other to which we will advert, not only that an executory contract of sale had been entered into and that Cochran, to that extent, was acting for the plaintiff, but also that he was fully authorized to receive the purchase money and put the

defendant in lawful possession of the premises.   To this conclusion we cannot give our assent.

We do not understand the able counsel for the appellee to contend that any such authority was ever actually conferred upon Cochran, either expressly or by implication.   Such a contention would run counter to the entire current of the evidence, and would be untenable.   But he does earnestly argue that the transfer of the .possession by Cochran and his receipt of the purchase money, in so far as he can be said to have received it, were acts within the apparent scope of the authority actually conferred, and, therefore, binding on the plaintiff.   To sustain this position he relies first, on the fact that when the secretary of the plaintiff visited Chester to try to induce the defendant to raise his offer, he viewed the premises, and that there was, at that time, affixed to the building a " For Sale " board, of the kind ordinarily used by real estate agents, representing Cochran as " agent " for the property.   Without stopping to discuss the significance of such a sign, even if observed by a secretary of a corporation, we think it sufficient to say there is no evidence whatever that he saw it, or that his attention was directed to it by anyone. Its mere location there could not fix the plaintiff with liability for a wholly unauthorized act by Cochran.

Stress is next laid on the remark, made by the same officer at the conclusion of his interview with Babe, that he might further " arrange with Mr. Cochran," or " finish it out with Cochran."   Considering the scope and object of that interview—to say nothing of the authority of a secretary of a corporation in dealing with its real estate—we think it would be going beyond the limits of safety and reason to permit such a remark to be construed as even an apparent delegation to a mere agent, authorized to seek a purchaser, of all the right and power over real estate which are the badges of ownership.   It is also true that Cochran demanded and received $100 on account of the purchase money, giving a receipt therefor which .he signed as " agent " for the plaintiff.   Such a demand was a violation of the terms of the accepted offer, and ought to have invited some inquiry by the defendant.   But Cochran's act was but his own declaration of his agency to receive the purchase money, and, under all the authorities, would not

bind the plaintiff unless ratified by it or acquiesced in after knowledge. As to these essentials the evidence is silent. Finally, the allegation that Babe ever paid the remaining $900 of "purchase money," even to Cochran, has no foundation in the evidence. The money received by Cochran from the trust company was not paid to him as purchase money but as the proceeds of a loan, in a transaction in which he represented only the defendant. The money was credited to the latter in the books of his agent. Babe and Cochran both recognized the control of the former over that fund in the payment to Nodes that reduced it below the balance yet due on the purchase money.

If the defendant has lost his money by reason of the confidence he reposed in Cochran it is greatly to be regretted, but after a careful study of the evidence and this lengthy review of it we are unable to see in the record any sufficient reason why the legal title of the plaintiff should not have prevailed.

Judgment reversed, and it is now ordered that, within ten days from the filing of this order in the court below and notice thereof to counsel, the plaintiff file, in the office of the prothonotary of said court, for the use of the defendant, a good and sufficient deed for the premises in dispute, and that thereupon judgment be entered for the plaintiff, on its motion for judgment n. o. v., for the premises described in the writ with six cents damages and costs ; conditioned, however, that if, within thirty days thereafter, the defendant pay to the plaintiff, or its counsel of record, the sum of $1,000, with interest thereon from the date of the verdict and costs of suit, the said judgment be released and final judgment be entered for the defendant. The costs of this appeal to be paid by the appellee.